# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LARRY W. MORRIS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 12-2121-KHV |
| JAMES ZAGER, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

Larry W. Morris, Jr., brings suit against James Zager and the Unified Government of Wyandotte County and Kansas City, Kansas ("Unified Government"). Under 42 U.S.C. § 1983, plaintiff asserts that Zager violated his right to be free from excessive force under the Fourth Amendment (Count I) and that the Unified Government is liable because it did not adequately train, supervise and counsel Zager regarding his use of deadly force (Count II). See Pretrial Order (Doc. #43) filed February 20, 2013 at 12-13. Plaintiff also asserts claims that the Unified Government is liable under the Kansas Tort Claims Act ("KTCA"), K.S.A. § 75.6101, et. seq. (Count III). Id. at 13. This matter comes before the Court on defendants' Motion For Summary Judgment (Doc. #57) filed June 21, 2013. For reasons stated below, the Court overrules defendants' motion.

## I.     Legal Standards

### A.     Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits and other materials, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed.

R. Civ. P. 56(a), (c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Kaufman v. Higgs, 697 F.3d 1297, 1300 (10th Cir. 2012). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which he carries the burden of proof. See Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250–51. In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251–52.

### B. Qualified Immunity

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity provides government officials immunity from suit as well as from liability for their discretionary acts. See Mitchell v. Forsyth, 472 U.S. 511, 526–27 (1985). The doctrine of qualified immunity serves the goals of protecting officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority. Butz v. Economou, 438 U.S. 478, 506 (1978).

When defendant asserts a qualified immunity defense at the summary judgment stage, the burden shifts to plaintiff to show that defendant violated a constitutional right and that the constitutional right was clearly established at the time of the alleged violation. Vondrak v. City of Las Cruces, 535 F.3d 1198, 1204 (10th Cir. 2008). To satisfy this burden, plaintiff must show facts which, when viewed in the light most favorable to plaintiff, demonstrate that (1) defendants' conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged violation. See Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). If plaintiff does so, the burden shifts back to defendant to prove that no genuine issues of material fact exist and that defendant is entitled to judgment as a matter of law. See Olsen, 312 F.3d at 1312. If the record shows an unresolved issue of fact relevant to the qualified immunity analysis, the Court must deny the motion for summary judgment. See id.

### II. Facts

The following facts are either undisputed or construed in the light most favorable to plaintiff.

**A. Shooting On March 6, 2010**

On March 6, 2010, plaintiff rode as a passenger in a red Pontiac Grand Am driven by his girlfriend, Shasta McCambry, in the 1900 block of North 5th Street in Kansas City, Kansas. As a convicted felon, plaintiff was prohibited from carrying a firearm. Nevertheless, he had a .40 caliber Smith and Wesson handgun in his waistband.

At 4:15 p.m., Officer Zager of the police department of Kansas City, Kansas activated his lights and sirens and stopped the Pontiac to investigate a window tint violation. At the time of the stop, the Pontiac was heading north on 5th Street between Parallel Avenue and Troup Avenue. Zager was in uniform and driving a marked patrol car. He stopped his car behind the Pontiac, advised the dispatcher that he was on a car stop and gave the dispatcher the Pontiac license tag number and his location.

Zager exited his patrol car and walked to the driver door of the Pontiac. He asked McCambry for her driver's license and insurance, which she provided. Zager bent down and asked plaintiff his name. Plaintiff stated his name. Zager asked for identification and plaintiff produced his driver's license.

Zager told McCambry that he had stopped her because the window tint on her car was dark. Zager put a tint meter on the car window and told McCambry that it was too dark. Plaintiff did not say anything.

Zager believed that he smelled a strong odor of marijuana coming from the car. He asked McCambry to step out of the car. Zager took McCambry back to his patrol car. There, he told her that he had smelled marijuana coming from her car and that he was going to search the car for marijuana. Because his patrol car did not have a cage, Zager handcuffed McCambry to the front

push bumper of the car.[1]  Zager was courteous to McCambry the entire time.

Zager ran a warrant check on McCambry, but not on plaintiff. Zager contends that he tried to run a warrant check on plaintiff but that he could not do so due to too much communication by other officers with dispatch.[2] Zager Depo. at 45:17-46:5. Zager could have waited for the radio traffic to lessen to gather information on plaintiff.

Zager did not request police backup. Zager testified that he did not do so because the situation involved possession of marijuana, a simple misdemeanor, and plaintiff had already provided identification which showed that he was a Kansas resident. Id. at 46:15-47:6. Zager testified that unless plaintiff refused to sign a ticket, he would receive a ticket and be on his way. Id. at 46:22-47:2. Zager stated that it is like getting a traffic ticket and that "is a very common stop and it's not a full custodial arrest where they're going to go down to jail. There would be very limited circumstances where that would happen." Id. at 47:1-6.

Zager planned to sit plaintiff on the curb where he could keep an eye on him while he searched the car. He proceeded to the passenger side of the Pontiac and tapped on the window. Zager opened the door and asked plaintiff to step out of the car. Plaintiff got out of the car with the .40 caliber Smith and Wesson handgun in his waistband. Plaintiff stood in the street about an arm's

---

[1] Handcuffing an individual to the front bumper of a vehicle is not a recommended practice. Zager testified that although it is not standard procedure, handcuffing someone to the push bumper of the police car is an acceptable procedure and is not prohibited. Zager Depo. at 43:11-24. Elsewhere in his deposition, Zager stated that he left the police car running and that the car could have been taken by anyone who was in it. Id. at 47:12-13. Zager did not believe that it was dangerous to leave a person handcuffed to the front of the vehicle. Id. at 44:2-11.

[2] Plaintiff contends that the audio from Zager's microphone does not reflect any effort to run a warrant check on plaintiff. Defendants' Exhibit 7 contains a video and audio recording of the stop, but much of the audio is difficult to hear.

length from Zager.[3] Plaintiff was staring straight ahead. He wore several shirts and big, baggy clothing. Zager could not see the outline of him and immediately became concerned that he might be armed.[4] Plaintiff was almost six feet tall and weighed 240 pounds. Zager was about the same height, if not a little taller. Zager asked plaintiff if he had anything on him. Plaintiff did not answer. Zager told plaintiff to turn around and put his hands on the car, which plaintiff did. Zager touched plaintiff's right arm. Plaintiff fled, running south towards the rear of the Pontiac.[5] Zager pursued plaintiff and grabbed his right arm. Plaintiff ran south along the passenger side of the Pontiac and the patrol car, with Zager pulling on him. When plaintiff was at the passenger side of the patrol car, he threw the handgun from his waistband. The gun landed south of the patrol car at the entrance to a church parking lot, near the curb. As Zager pulled, plaintiff's outer shirt came off. Zager grabbed plaintiff's arm again.

As they reached the rear of the patrol car, Zager jumped onto plaintiff's back and put his arms around plaintiff in a bear hug or a choke hold. They struggled past the rear of the patrol car,

---

[3] Zager contends that plaintiff stepped aggressively into his personal space. Plaintiff denies this contention. Plaintiff admits that he was about an arm's length away from Zager. Morris Depo. at 64:3-5.

[4] Zager testified that (1) he did not step back from plaintiff because he did not want to give him freedom of movement after he had been aggressive; (2) he did not call for backup because plaintiff was immediately in his face, and there was no time to talk on the radio; and (3) he did not step back and use his microphone to request backup because he believed that plaintiff was armed and he did not have him under control. Plaintiff does not dispute that Zager formed these opinions based on his perception of the facts. See Plaintiff's Response To Defendants' Motion For Summary Judgment ("Plaintiff's Response") (Doc. #65) filed July 25, 2013 at 3, ¶¶ 27-29. Plaintiff contends that he did not act aggressively and that a prudent officer would have called for backup and kept a safe distance from an individual believed to be armed.

[5] Zager did not get on the radio and request backup because it was a very quick encounter. Plaintiff was within arm's reach and Zager believed it was necessary to take him into custody. Zager did not attempt to use his Taser on plaintiff. Zager testified that plaintiff took off too quickly and he did not think that he could get a good shot on him.

moving toward the middle of the street. In the middle of the street, they wrestled with Zager still on plaintiff's back. Several times, they fell to their knees and got back up with Zager behind plaintiff the entire time. Plaintiff fell backward to the ground, with Zager lying beneath him. Zager still held plaintiff in a choke hold. Plaintiff attempted to roll to his left side. When plaintiff succeeded in rolling to his left side, he felt Zager's arms release from around his neck. Plaintiff tried to get up. As plaintiff was getting up off of his left knee, Zager – who was still on the ground – grabbed plaintiff's right arm and fired three shots under plaintiff's arm. Plaintiff yanked away and tried to run south. As soon as Zager let go of plaintiff's arm, he fired three more shots which hit plaintiff in his upper back. Plaintiff fell to the ground, lying with his right arm stuck underneath him. Zager walked up to him with his weapon out and stated, "Let me see your hands."[6] Plaintiff told him that he did not have anything and pulled his right arm out, so that both arms were in front of him. Plaintiff's Depo. at 80:19-23. Zager then backed to the north, pointing his weapon at plaintiff and yelling over and over, "Get your hands out!"

Plaintiff was shot six times: three times under the right arm pit, once in the right tricep, which then struck his jaw, and two times in the upper back. The audio from the patrol car video recording indicates that six shots were fired consecutively, with no break between shots, in a matter of two seconds.

After the shooting, Zager kept his weapon pointed at plaintiff and called for backup. Officer

---

[6] Zager testified that he believed that plaintiff was lying on his handgun. Zager testified that earlier in the struggle, he heard something hit the ground. Zager Depo. at 68:23-69:2. Zager stated that as he looked around, he saw a pistol on the ground underneath plaintiff's body, which was bent over. Id. at 69:2-22. Zager testified that multiple times, plaintiff tried to get the handgun but that Zager hit, kicked or slapped the gun away. Id. at 69:23-70:23. Zager testified that he believed that plaintiff had control of the handgun and that as they rose up, plaintiff was turning it in his direction.

Lucas Pruitt responded to the scene. When he arrived, Pruitt saw Zager standing in the road holding his gun toward plaintiff, who was lying in the middle of the northbound lane. Only one of plaintiff's hands was visible. As Pruitt approached plaintiff, Zager advised that plaintiff had a gun.

Seconds after Pruitt, Officer Paul Simonich also responded to the scene. Simonich saw that Zager had his weapon drawn and was pointing it at a black male who was lying face down in the middle of the street, with one hand visible. Zager warned Simonich that a weapon might be underneath the suspect.

Pruitt and Simonich rolled plaintiff on his side to see if a weapon was underneath him. The officers did not find a weapon underneath plaintiff. They subsequently located plaintiff's handgun on the east side of the street, at the entrance to a church driveway. The handgun was located three inches east of the curb, directly across from where plaintiff was shot. Plaintiff's wallet was four feet from the handgun. Plaintiff's cell phone, bloody clothes and shoes, along with shell casings, were located 20 to 25 feet west of the curb near the center line of the street where plaintiff and Zager were located at the time of the shooting. According to the diagram prepared by the Highway Patrol, the distance from south to north between the reference point (a pole just to the east of the front of the Pontiac) and the location of plaintiff's shirt immediately behind the patrol car was 41 feet. The distance from south to north between the reference point and the location of plaintiff's handgun was 51 feet. Thus, the gun was located approximately 10 feet south of the rear of the patrol car.

McCambry testified that while she was handcuffed to the front of the patrol car, she saw the following events: Plaintiff took off running along the passenger side of her car and the patrol car, to the back of the patrol car. Zager grabbed plaintiff's shirt, which came off near the back of the patrol car. Zager grabbed plaintiff from behind in a bear hug while plaintiff struggled to get away.

Plaintiff and Zager were in the middle of the street when plaintiff went to the ground with Zager behind him with his arms around plaintiff in a bear hug. Zager drew his handgun and shot plaintiff. At no time did she see plaintiff with a gun.

On the day of the shooting, Zager had lesser force available to him including a Taser,[7] a baton, pepper spray and open-hand control. Zager attempted empty-hand control on plaintiff. After using empty-hand control, he could have used his baton or pepper spray to subdue plaintiff.

Regarding the shooting on March 6, 2010, Zager never offered to give a polygraph test and was never ordered to give one.

A prudent officer would call for backup if he believes that an individual is armed. If an officer believes an individual is armed, he would not be nose-to-nose with him, but instead would keep a distance from him.

Philip Hayden, Ed.D., an expert witness retained by plaintiff, worked for the FBI from 1973 until 1999. For ten years, he was a special agent in the field. For seven years, he worked in the special operations and research unit. For the last ten years he was in charge of training new agents. In Hayden's opinion, Zager did not follow appropriate procedures during the incident and did not use available lesser force to subdue plaintiff. Hayden believes that if Zager had done those things he would not have been in a position where he had to resort to deadly force. Hayden testified that based on his prior actions and misconduct, Zager needed additional counseling, training, supervision and evaluation. According to Hayden, the policies and procedures of the police department of Kansas City, Kansas on the use of force are standard. Hayden testified that as far as training on the

---

[7] A Taser is used for escape resistance when a person is trying to flee and after the use of empty-hand control. The Taser is charged and ready to fire like a handgun and has a distance of zero to 21 feet, with the optimum range from seven to 15 feet.

principles of use of force and the techniques, he has no reason to believe that Zager was not properly trained. Hayden did not examine and does not have any opinion to render regarding the training that Zager received regarding car stops.

### B. Other Incidents Involving Officer Zager

On June 12, 2003, Zager was involved in an off-duty incident at Jerry's Bar in Kansas City, Kansas. Zager maintained that he was assaulted inside the restroom of the bar. Subsequently, Zager and his brother were involved in a fight outside the bar. During the fight, Zager drew his gun and commanded the people outside to get on the ground. Zager left the scene when police were called. Zager testified that he left the bar to contact the police department. Zager never contacted the police department to report what had happened.

The police department conducted an internal affairs investigation of the incident.[8] As part of the investigation, Zager and the other person involved in the bathroom incident were given a computerized voice stress analyzer. Zager's responses showed deception, while the other person's did not. The chief of police, Ron Miller, concluded that it was not likely that Zager had been assaulted in the bathroom, as he had claimed in the internal affairs investigation.[9] Miller also concluded that Zager had exercised poor judgment in drawing his gun instead of using chemical spray, and in pointing the gun at citizens. Miller believed that discipline against Zager would not be upheld, however, if the union chose to challenge it.[10] Therefore, instead of imposing discipline,

---

[8] An internal affairs investigation is a significant action. It is extremely important that officers are honest in the investigation.

[9] Miller was the chief of police from 2000 to June of 2006.

[10] Miller testified that he did not discipline Zager due to the following reasons: (1) the case was worked as a criminal investigation and the district attorney's office found that multiple
(continued...)

-10-

Miller issued a "policy advisory" on August 4, 2003. In the advisory, Miller advised Zager that he should not have displayed his weapon since he was not in a direct, immediate, deadly force confrontation and that he had acted in a manner inconsistent with police department policy and training. Miller did not believe that Zager needed remedial training. Zager had failed to follow policy. The advisory reminded Zager of the policies and emphasized that he was expected to comply with them. Zager received no training or counseling after the incident at Jerry's Bar.

In the following year, Zager was placed on an early warning system for unspecified problems. Between December of 2004 and February of 2005, Zager had seven other complaints regarding his performance.

In 2005, Zager came to the aid of two officers who were trying to subdue a suspect who was resisting arrest. When a recruit officer yelled that the suspect had a gun, Zager struck the suspect with a metal flashlight, fracturing his leg. On June 22, 2005, after reviewing the results of an internal affairs investigation, Miller issued Zager a memorandum. In the memorandum, Miller stated that "there is not enough evidence to support that the force used was excessive or unnecessary." Miller instructed Zager, however, that the incident had not involved a deadly force encounter as Zager had maintained:

> You relate that you believed that the encounter was a deadly force encounter based

---

[10](...continued)
accounts of the situation existed with no single account more justified than any other; (2) the police department encouraged the other person involved in the incident to file municipal court charges against Zager but he refused to do so, which meant that any evidence of criminal wrongdoing would be impossible to obtain; and (3) regarding an administrative investigation, no witnesses were willing to cooperate with the police department. See Miller Depo. at 19:5- 23:12, Exhibit 11 to Memorandum In Support Of Defendants' Motion For Summary Judgment ("Defendants' Memorandum") (Doc. #58) filed June 21, 2013. Miller stated that in a disciplinary action, officers are represented by a battery of attorneys who will defend them and that in his opinion, the likelihood of sustaining disciplinary action against Zager was highly unlikely. Id. at 21:23-22:3.

> on the urgency in Recruit Officer Crawford's voice and that urgency justified the use of the metal flashlight. The urgency in the recruit officer's voice and the presence of the gun did not escalate the encounter to the level of deadly force. An attempt by the subject to attempt to use the weapon against the officers would have been a deadly force confrontation. This is not the first time you may have incorrectly assessed a situation of this nature (C03-8-069). Officers regularly encounter weapons requiring officer safety procedures that do not rise to the level of a deadly force confrontation. * * *
>
> The purpose of this communication is to document for the Investigative File and your Personnel Jacket that situations of this nature require mature judgment and a judicious use of physical force. * * *

Defendants' Memorandum (Doc. #58) at 14, ¶ 74. Zager received no other counseling or training as a result of the 2005 incident.

In April of 2007, Zager attempted to remove Sampson England from a car. England drove away, dragging Zager with him. Fearing that he or another officer would be seriously injured, Zager shot England. At the time, Zager was equipped with a Taser and chemical spray. After reviewing the results of the police investigation, District Attorney Jerome Gorman found that Zager's use of deadly force was justified. Chief of Police Sam Breshears found that Zager had not violated any police department rule.[11] As a result, Zager did not receive discipline, additional training or counseling. In his deposition, Zager disagreed with the suggestion that he could have used a Taser on England. Zager stated that he did not think that the police had Tasers at the time and that use of a Taser in a deadly force encounter would have been contrary to policy.

In May of 2007, Zager fired his handgun in a residential neighborhood in the area of 107th and Georgia in Kansas City, Kansas. At the time, Zager was off duty and intoxicated. As a result of the incident, Breshears suspended Zager without pay for 60 days.

---

[11] Breshears was the chief of police from September of 2006 through June of 2010. Prior to that, from 2000 through 2006, he was second in command.

**III. Analysis**

As noted, plaintiff claims that (1) Zager violated his constitutional rights by using excessive force against him; (2) the Unified Government is liable because it did not adequately train, supervise and counsel Zager regarding the use of deadly force; and (3) the Unified Government is liable under the KTCA. See Pretrial Order (Doc. #43) filed February 20, 2013 at 12-13. Defendants seek summary judgment on grounds that (1) Zager is entitled to qualified immunity on the excessive force claim; (2) the Unified Government is not liable under Section 1983; and (3) the United Government is immune from liability under the discretionary function exception to the KTCA.[12]

**A. Whether Zager Is Entitled To Qualified Immunity On Excessive Force Claim**

Plaintiff claims that Zager violated his constitutional rights by using excessive force against him. Defendants assert that Zager is entitled to qualified immunity on this claim. To overcome a qualified immunity defense on summary judgment, plaintiff must show facts which, when viewed in the light most favorable to him, demonstrate that (1) defendant violated a constitutional right and (2) the constitutional right was clearly established. Vondrak, 535 F.3d at 1205 (10th Cir. 2008); Olsen, 312 F.3d at 1312. The Court analyzes excessive force claims under the objective reasonableness standard of the Fourth Amendment. See Graham v. Connor, 490 U.S. 395 (1989); Walker v. City of Orem, 451 F.3d 1139, 1159 (10th Cir. 2006). Determining whether force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake. Graham, 490 U.S. at 396; Walker, 451 F.3d at 1159. In conducting this inquiry, the Court considers the totality of the circumstances including factors

---

[12] Defendants do not seek summary judgment on the KTCA claims against Zager.

such as the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396. Under the Fourth Amendment, the use of deadly force is justified if a reasonable officer in Zager's position would have probable cause to believe that plaintiff posed a threat of serious physical harm to himself or to others. Phillips v. James, 422 F.3d 1075, 1083 (10th Cir. 2005). In assessing the degree of threat facing defendant, the Court considers several factors including (1) whether Zager ordered plaintiff to drop his weapon and plaintiff's compliance with police commands; (2) whether plaintiff made any hostile motions with the weapon toward Zager; (3) the distance separating Zager and plaintiff; and (4) the manifest intentions of plaintiff. See Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1260 (10th Cir. 2008). The reasonableness of defendants' conduct must be assessed from the perspective of a reasonable officer on the scene who may be forced to make split-second judgments under stressful and dangerous conditions. Walker, 451 F.3d at 1159.

Plaintiff asserts that Zager's use of deadly force was unreasonable because (1) the severity of the alleged crime (possession of marijuana) was minimal; (2) plaintiff was merely attempting to flee the scene; (3) plaintiff never turned toward Zager in a threatening manner; (4) plaintiff did not possess a handgun during the struggle; and (5) plaintiff's gun was more than 20 feet away. Plaintiff's Response (Doc. #65) filed July 25, 2013 at 16-17. Defendants asserts that as a matter of law, the use of force was objectively reasonable under the circumstances. Defendants' Memorandum at 18. Defendants assert that the uncontroverted facts establish that at the time of the shooting, Zager honestly believed that plaintiff had a handgun. See id. at 20. In support of this assertion, defendants cite undisputed facts that after the shooting, Zager pointed his weapon at

plaintiff and demanded to see his hands and warned other officers that plaintiff might have a gun underneath him. See id. at 20-21.

That Zager may have genuinely believed that plaintiff had a gun does not prove as a matter of law that his belief was reasonable or that he acted reasonably under the circumstances. Construed in the light most favorable to plaintiff, the facts suggest that early on in the encounter, plaintiff discarded his weapon and was merely trying to flee the scene. Indeed, the undisputed facts establish that after the shooting, plaintiff's gun was 20 feet away from where plaintiff was shot. Accepting plaintiff's version of the facts, at the time of the shooting, Zager did not have probable cause to believe that plaintiff posed an immediate threat of serious physical harm to himself or others.[13] See, e.g., Walker, 451 F.3d at 1160.

Moreover, construed in the light most favorable to plaintiff, the record supports an inference that Zager's own reckless conduct unreasonably created the need to use force. The reasonableness of the use of force depends not only on whether Zager was in danger at the precise moment that he used force, but also on whether his own "reckless or deliberate conduct during the seizure unreasonably created the need to use such force." Sevier v. City of Lawrence, Kan., 60 F.3d 695, 699 (10th Cir. 1995). Here, construing the facts in favor of plaintiff, the record supports a reasonable inference that Zager acted recklessly in attempting to search the vehicle without calling for backup – particularly when he had no place to safely secure plaintiff and McCambry during the search – and that his conduct unreasonably created the need to use force. The testimony of plaintiff's expert supports this conclusion. See Hayden Depo. at 72:3-75:5 (Zager should have

---

[13] Zager asserts that he reasonably believed that plaintiff was turning to shoot him. See Defendants' Memorandum (Doc. #58) at 21. This argument, however, depends on a finding in the first instance that Zager reasonably believed that plaintiff had a gun in his hands. As discussed, the record presents material fact questions in this regard.

called for backup when he smelled marijuana; very foolish to single-handedly take plaintiff out of vehicle). On this record, plaintiff has shown facts which demonstrate that Zager violated a constitutional right.

To overcome summary judgment on qualified immunity, plaintiff must show that the constitutional right was clearly established. Vondrak, 535 F.3d at 1205 (10th Cir. 2008); Olsen, 312 F.3d at 1312. The right to be free from excessive force is well established in the Tenth Circuit. See, e.g., Walker, 451 F.3d at 1160. Defendants contend that a reasonable officer in Zager's position could have believed that his conduct was lawful. See Defendants' Memorandum (Doc. #58) at 24. Defendants' argument, however, rests entirely on the assertion that Zager reasonably believed that plaintiff had retrieved the handgun and intended to shoot him. See id. at 24-25. As discussed, material fact issues exist in this regard. Accordingly, the Court overrules defendants' motion on this ground. See, e.g., Olsen, 312 F.3d at 1312-15.

### B. Whether The Unified Government Is Liable Because It Did Not Adequately Train, Supervise And Counsel Zager

Plaintiff claims that the Unified Government is liable under Section 1983 because it did not adequately train, supervise and counsel Zager regarding the use of deadly force. Under Section 1983, a county may be held liable only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). To establish liability, the official policy must be the "moving force" behind the injury alleged. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997). In other words, plaintiff must show that the county action was taken with the requisite degree of culpability and demonstrate a direct causal link between the county action and the deprivation of constitutional rights. See id. To show the requisite degree of culpability, plaintiff must show that the Unified Government acted with "deliberate

indifference," that is, that the county had actual or constructive notice that its own action or failure to act was substantially certain to result in a constitutional violation, and that it consciously or deliberately chose to disregard that risk of harm. See id. at 407-08. In addition, plaintiff must show a direct causal link between the county action and the specific constitutional deprivation such that the county, through its deliberate conduct, is the moving force behind the injury alleged. See id. at 404.

Defendants assert that plaintiff has no evidence that the Unified Government demonstrated deliberate indifference or that its action was the moving force behind the alleged unconstitutional shooting. See Defendants' Memorandum (Doc. #58) at 27-33. Construed in the light most favorable to plaintiff, the record suggests otherwise. On at least three prior occasions, Zager improperly used his handgun and/or improperly assessed a situation as one involving deadly force. In 2003 regarding the incident at Jerry's Bar, the police chief concluded that Zager should not have displayed his weapon because he was not in a direct, immediate, deadly force confrontation, and that he exercised poor judgment in pointing the gun at citizens. In 2005 when Zager fractured a suspect's leg with his metal flashlight, the police chief informed Zager that the encounter did not involve deadly force as Zager believed, and that it was not the first time that Zager had incorrectly assessed a situation of this nature. In 2007 while off duty and intoxicated, Zager improperly fired his handgun in a residential neighborhood. As a result of the first two instances, Zager received a policy advisory and a memorandum for his personnel file. For the third instance, he was suspended for 60 days without pay. At no time did the Unified Government impose additional training or supervision for Zager. In the opinion of plaintiff's expert witness, the Unified Government should have known that Zager posed a potential problem and should have counseled or re-trained him. See Hayden Depo. at 129:7-

130:9.

Construed in the light most favorable to plaintiff, a fact finder could reasonably conclude that these incidents created a pattern of conduct which put the Unified Government on notice that its failure to train, supervise or counsel Zager was substantially certain to result in a constitutional violation, and that it consciously or deliberately chose to disregard the risk of harm. See, e.g., Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998). Moreover, the facts suggest a strong connection between the prior incidents, i.e. Zager improperly using his handgun and/or improperly assessing that situations involved deadly force when they did not, and the alleged unconstitutional shooting of plaintiff. See Brown, 520 U.S. at 412; cf. Estate of Smith v. Silvas, 414 F. Supp.2d 1015, 1021 (D. Colo. 2006) (no causal link between shooting and inadequate supervision where no evidence that defendant ever improperly fired weapon). Accordingly, the Court overrules defendants' motion on this ground.

### C. Whether The Unified Government Is Liable Under The KTCA

Plaintiff claims that the Unified Government is liable under the KTCA for Zager's use of excessive force. Defendants seek summary judgment on grounds that (1) Zager was justified in using deadly force; (2) the public duty doctrine precludes the claim; and (3) under the discretionary function exception, the Unified Government is immune from liability. The KTCA states that a governmental entity is liable for "damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. § 75-6116(a).

Defendants assert that the Unified Government is not liable because Zager was justified in

using force against plaintiff, i.e. he reasonably believed that deadly force was necessary to prevent death or great bodily harm to himself. See Defendants' Memorandum (Doc. #58) at 35. As discussed, material issues of fact exist in this regard. Accordingly, defendants are not entitled to summary judgment on this ground.

Defendants assert the public duty doctrine precludes "aspects" of plaintiff's negligence claim. Defendants' Memorandum (Doc. #58) at 36. Specifically, defendants assert that to the extent plaintiff's claim is based on Zager's acts or omissions preceding the actual application of force, it fails as a matter of law. Id. Under the public duty doctrine, absent some special relationship with or specific duty owed to an individual, law enforcement officers owe duties to the public at large and not to any specific person. See Conner v. Janes, 267 Kan. 427, 429, 981 P.2d 1169, 1171 (1999). Defendants assert that although Zager owed plaintiff a special duty to not use unreasonable force, he did not owe other duties such as calling for backup, running plaintiff's information with the dispatcher before approaching him, stepping back and creating a safety zone or using a Taser when plaintiff fled. Defendants' Memorandum (Doc. #58) at 36. Defendants assert that to the extent that plaintiff bases his negligence claim on acts or omissions which occurred before Zager applied force, the Unified Government is entitled to summary judgment. Id. Defendants cite no authority that acts and omissions leading up to the shooting are not relevant to the question whether Zager used unreasonable force against plaintiff. Moreover, they cite no support for their conclusion that Zager owed no duty other than not to use unreasonable force. Id. On this record, defendants have not shown that they are entitled to summary judgment on this ground.

Defendants assert that under the discretionary function exception, the Unified Government is immune from liability. The KTCA excepts from liability damages resulting from "any claim

based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." K.S.A. § 75-6104(e). Defendants assert that under this provision, the Unified Government is immune from liability because Zager's use of deadly force was discretionary. See Defendants' Memorandum (Doc. #58) at 37. The Kansas Tort Claims Act, however, does not shield defendants from liability based on acts of excessive force. See Clark v. Thomas, 505 F. Supp.2d 884, 894 (D. Kan. 2007); Caplinger v. Carter, 9 Kan. App.2d 287, 295, 676 P.2d 1300, 1307 (1984). Although defendants contend that Zager's use of force was reasonable, material fact issues exist in this regard. On this record, defendants are not entitled to summary judgment.

**IT IS THEREFORE ORDERED** that defendants' Motion For Summary Judgment (Doc. #57) filed June 21, 2013 be and hereby is **OVERRULED**.

Dated this 10th day of December, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
Kathryn H. Vratil  
United States District Judge